**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MODE GLOBAL, LLC,** | § | |
| | § | **Civil Action No.** 3:24-cv-1675 |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CASEY SMITH,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND**
**APPLICATION FOR INJUNCTIVE RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff MODE Global, LLC ("**MODE**") ("**MODE**" or "**Plaintiff**"), by and through its attorneys, brings this Original Complaint and Application for Injunctive Relief against Defendant Casey Smith ("**Smith**" or "**Defendant**"), and in support thereof respectfully alleges and shows the Court as follows:

## I.     SUMMARY

1.      This is a story of deception and greed. Smith is a former employee of a wholly-owned subsidiary of Plaintiff MODE whose job was to service MODE's customers—businesses in need of shipping and related logistics services. Smith received and used a variety of MODE's confidential information in the performance of her duties. When servicing MODE's customers, Smith also leaned on the substantial business and customer goodwill MODE spent years developing. To protect its confidential information and customer goodwill, MODE required that Smith execute an Employment Agreement containing reasonable covenants designed to protect same. In October 2023, MODE terminated Smith's employment for performance reasons. Several months later, the parties executed a Settlement Agreement to resolve a bona fide dispute

in which MODE admitted no liability or wrongdoing. Pursuant to the Settlement Agreement, Smith received a substantial sum. To induce MODE to execute the Settlement Agreement, Smith represented and warranted that she had returned MODE's confidential information and had not used or disclosed same for her benefit or anyone else and, further, that she would not solicit specific customers of MODE. Apparently, Smith's representations were knowingly false.

2.     In an apparent scheme to defraud Plaintiff MODE and enrich herself, Smith is violating both her Employment Agreement and the Settlement Agreement. Specifically, Smith either has solicited or is preparing to solicit one of two customers covered by the Employment Agreement's narrowly tailored non-solicitation provision. Worse, Smith is doing this using MODE's confidential information and trade secrets—which she apparently retained and has misused despite written affirmations to the contrary. MODE's allegations are not mere speculation and, rather, are based upon Smith's own words. For example, Smith recently told a former colleague—in writing—that she retained a "**whole bid document**" from her MODE employment that contains detailed information regarding "**all the lanes … won or lost**". Smith's retention and misuse of Plaintiff's confidential pricing and customer information is a breach of her agreements, violates state and federal law, and constitutes fraud.

3.     Smith has effectively broken every promise she made to Plaintiff MODE— promises that allowed Smith to maintain gainful employment and receive a handsome settlement payment on her way out the door. Smith's deception and misconduct are unlawful and must be stopped.

## II.    THE PARTIES

4.     Plaintiff MODE is a Delaware limited liability company with its principal place of business at 17330 Preston Road, Ste. 200C, Dallas, Texas 75252. In this lawsuit, the term "MODE" means MODE Global, LLC and any entity that controls, is controlled by, or is under

common control with MODE Global, LLC, including any parent, subsidiary, or affiliated entities, including TTS and Avenger.

5.      Defendant is a natural person who, on information and belief, resides in Chattanooga, Tennessee and may be served at 714 W. 42nd Street, Chattanooga, TN 37410.

### III.    JURISDICTION AND VENUE

6.      Plaintiff MODE brings a federal claim under the Defend Trade Secrets Act of 2016 ("**DTSA**"). Plaintiff owns the trade secrets at issue, which relate to a product or service used in, or intended for use in, interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1).

7.      The Court has subject matter jurisdiction pursuant to the following statutes: (a) 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution and laws of the United States; and (b) 28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over state law claims, including, without limitation Plaintiff MODE's claims against Smith under the Texas Uniform Trade Secrets Act; for civil/common law fraud, and breach of contract. The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties. MODE is a Delaware limited liability company with its principal place of business in Texas, while Defendant is a natural person who resides in Tennessee.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(a) through (c) because Plaintiff MODE resides and conducts business in this judicial district and a substantial part of the events or omission giving rise to MODE's claims occurred in this juridical district. In addition, or in the alternative, venue is proper in this judicial district because of the existence of two valid and enforceable forum selection clauses. Specifically, Section 9 of Smith's Employment Agreement with MODE designates that any action arising thereunder may be brought in "any

federal or state court located within Dallas County, Texas" and further notes that the parties "irrevocably waive … any objection that they may now or hereafter have to the laying of venue" in Dallas County. In addition, Smith's Settlement Agreement with MODE provides that any actions arising thereunder shall "be brought and heard in the United States District Court for the Northern District of Texas" and contains a consent to exclusive jurisdiction and venue of and in this Court.

## IV.    FACTUAL ALLEGATIONS

### A.    Nature of MODE's Business Operations.

9.      Plaintiff MODE is a third-party logistics business that provides transportation logistics services to customers with complex shipping needs. MODE offers its clients a wide-range of transportation options through a single provider, including intermodal, air and ocean services, freight forwarding, supply chain management, full and less-than truckloads, parcel, and other transportation services. In short, customers retain MODE to find the optimal method of transportation to handle shipping and related services.

10.     MODE also owns operating companies that provide the above-mentioned transportation and logistics services to its customers. One such operating company is Avenger Logistics ("**Avenger**"), which MODE acquired in February 2021. Consequently, while Smith worked for Avenger, she was a MODE employee.[1]

11.     To provide its customers with transportation logistics services, MODE leverages its buying power, large network of industry connections,[2] operating systems, financial services—including credit processing, collections, and vendor payments—and other back-office sales,

---

[1] https://avengerlogistics.com/.
[2] Including carrier and overseas consolidation partner relationships/contracts.

marketing and solutions support[3] to conduct business and service its customers. MODE also relies on employees, such as Smith, to service its customers by, among other things, brokering freight and shipments. MODE employees do this by using the company's substantial resources, technology infrastructure, carrier connections, and confidential business information and trade secrets.

**B.     <u>Smith's MODE Employment</u>.**

12.     Smith started with MODE in August 2021 as a Logistics Coordinator and held that job title until her MODE employment ended on October 11, 2023.

13.     As a Logistics Coordinator, Smith's responsibilities included servicing MODE's customers to ensure their shipping needs were fulfilled and the accompanying shipment information processed for payment. To perform her MODE job duties, Smith had access to, received, and used MODE's Confidential Information. This MODE "Confidential Information" specifically included, without limitation: (i) pricing information, (ii) customer identities and contact information, (iii) bid, offer, and acceptance data, (iv) shipping lane data—including volume, frequency, and revenue/profitability; (v) customer credit line information; and (vi) carrier information—including identities, reliability, contact information, and capacity.

14.     Smith frequently and directly interacted with MODE's customers to perform her job duties. Importantly, the customers Smith interacted with are ones MODE invested significant time, effort, and expense in developing relationships and goodwill. To do her job, Smith relied upon not only MODE's Confidential Information and infrastructure, but its business and customer goodwill.

15.     By virtue of her MODE employment, Smith also had access to the company's Transportation Management System ("**TMS**"), a database which houses a variety of MODE

---

[3] *E.g.*, analytics, market intelligence, reporting, branding, etc.

Confidential Information. The Confidential Information stored in MODE's electronic systems is created and maintained in the course and scope of MODE's business and includes, without limitation, the very Confidential Information described above. Such Confidential Information is of significant economic value to MODE and has been developed through years of work and expense.

16.     Smith could only access the Confidential Information using electronic access credentials that MODE provided to her solely for use in her role as a MODE employee, servicing MODE's customers. MODE only provided Smith with access to its Confidential Information after she promised in the Employment Agreement not to improperly use or disclose MODE's Confidential Information. Importantly, persons lacking appropriate electronic access credentials cannot access the TMS database and the Confidential Information. Accordingly, Smith had no authority or legitimate reason, to use MODE's Confidential Information for any purpose outside her employment.

C.     **Smith's MODE Employment Agreement.**

17.     As a condition of her employment with MODE, Smith agreed to and signed the Employment Agreement on August 10, 2021. A true and correct copy of the Employment Agreement is attached hereto as **Exhibit "1"** and is incorporated herein by reference.

18.     The Employment Agreement places certain necessary and reasonable non-disclosure and non-competition obligations on Smith. For example, Section 2.5 is titled "Non-Disclosure and Non-Use Obligations." Therein, Smith agreed not to "copy, take, or remove … any Confidential Information from any premises or facility maintained or owned by MODE." In the same section, Smith promised to "preserve in confidence and not disclose, use, distribute,

copy, publish, summarize or remove … either during or after the termination of [her] employment … any Confidential Information, except as required in [her] work for MODE[.]"

19.    In conjunction with Smith's duty not to disclose MODE's Confidential Information, the Employment Agreement also required that she return the company's property upon request. In Sections 2.7.1 and 2.7.2 of the Employment Agreement, Smith agreed that all materials relating to MODE's business furnished to Smith or prepared by Smith in conjunction with her work for MODE—including Confidential Information—belong to MODE ("**MODE Materials**"). Accordingly, Smith agreed that she: (i) would not copy or remove any MODE materials; (ii) would not provide any MODE Materials to a competitor; and (iii) return any MODE Materials to MODE upon the termination of her employment.

20.    The Employment Agreement also contains a limited, reasonable, and enforceable non-solicitation of customer provision that is expressly designed to protect MODE's Confidential Information and customer goodwill. Specifically, Section 2.8.2[4] provides that— during Smith's MODE employment and for one (1) year after—she shall not accept or solicit competing or similar business to that offered by MODE from two (2) customers (the "**Covered Customers**"), or encourage either of the Covered Customers to modify, lessen, or cease their business relationship with MODE. The Covered Customers are identified in the Agreement, and both of them were primary MODE accounts that Smith serviced during her employment. As a necessary component of Smith's work for MODE, she received substantial Confidential Information and customer goodwill regarding the Covered Customers that allowed her to perform her duties.

---

[4] As modified by the parties' Settlement Agreement.

**D.    To Induce MODE to Execute a Settlement, Smith Warrants She Has Not Retained or Used MODE's Confidential Information.**

21.    As a result of various performance issues, MODE terminated Smith's employment on or about October 11, 2023. Thereafter, Smith and MODE negotiated a settlement to resolve a bona fide dispute regarding the circumstances of her termination ("**Settlement Agreement**"). The parties executed the Settlement Agreement on March 15, 2024.

22.    While denying any wrongdoing or liability, pursuant to the Settlement Agreement MODE paid Smith $40,000 in exchange for full and complete releases of claims (the "**Settlement Payment**"). Smith also made certain express representations and warranties as an inducement to secure the Settlement Agreement and Settlement Payment. For example, Smith represented and warranted that, since the termination of her MODE employment, she:

> a.  Had not directly or indirectly accepted business or competitively solicited business from one of the customers she covered while associated with MODE;
>
> b.  Had not used or disclosed MODE's Confidential Information for her benefit or the benefit of anyone outside of MODE; and
>
> c.  Has complied with the Employment Agreement's "Return of Property" provision.

23.    Smith's representations and warranties were expressly designed to induce MODE to execute the Settlement Agreement and make the Settlement Payment. And the plain language of Settlement Agreement makes this fact clear. For example, Section 21 of the Settlement Agreement, titled "Entire Agreement," provides that MODE "**is relying on the accuracy of Smith's representations and warranties contained in Section 7 herein as a material inducement to execute this Agreement**." Accordingly, but for Smith's express representations, MODE would not have executed the Settlement Agreement. Since execution, MODE has

complied with all terms of the Settlement Agreement, including effectuating delivery of the Settlement Payment.

24.      In the Settlement Agreement, the parties also agreed to modify the Employment Agreement in three ways. First, the Employment Agreement's post-employment noncompete was removed. Second, the Employment Agreement's non-solicitation of employee provision was stricken. Third, and finally, the Employment Agreement's customer non-solicitation provision was modified such that Smith would only be prohibited from soliciting two explicitly identified customers for one year after her MODE employment ended. Smith and MODE executed an addendum to the Employment Agreement codifying these modifications (the "**Addendum**"). Importantly, the Addendum clarified that all provisions of the Employment Agreement "not modified in the manner expressly described [herein] shall remain unaltered and in full force and effect according to their terms."

**E.      Smith Has Breached the Employment Agreement and Defrauded MODE.**

25.      It now appears Smith's promises to MODE were both empty and fraudulent.

26.      On information and belief, Smith has recently become employed by Lync Logistics—a direct MODE competitor ("**Lync**").[5] Lync is a third-party logistics company that provides freight brokerage services, and is headquartered in Chattanooga, Tennessee.

27.      While Smith is permitted to work for a competitor, she is not permitted to use MODE's Confidential Information or violate the Employment Agreement's customer non-solicitation covenant. Unfortunately, that seems to be just what Smith has done.

28.      In June of 2024—less than three months after signing the Settlement Agreement—Smith exchanged text messages with a former colleague and MODE Account

---

[5] https://lynclogistics.com/

Manager. Therein, Smith proclaimed that she was either soliciting or preparing to solicit freight brokerage services for a key customer and prospect.

29.      Smith's solicitation efforts appear to have been aided by MODE's Confidential Information and, specifically, Confidential Information pertaining to the customer at issue. For example, in the text messages, Smith happily noted that she had "**a whole bid document saved on [her] phone for all the lanes [] bid on and won or lost**". Smith claimed she obtained the "bid document" from an individual named "Sunny". On information and belief, "Sunny" is the operations manager for two of MODE's customers.  Accordingly, on information and belief, the "bid document" Smith bragged about surreptitiously retaining for her use contains Confidential Information directly pertaining to at least one of MODE's most valued customers.

30.      In the same series of texts, Smith then sent an "emoji" of a face covering its mouth; ostensibly in recognition of the fact that her actions were wrong and she intended to keep them secret. Additionally, Smith noted that she had already impressed her new employer—and had "**taught them more than they realized with my suggestions to improve things**." On information and belief, the 'knowledge' Smith has imparted to Lync contains or reflects MODE's Confidential Information. An excerpt of this text exchange is shown below:[6]

---

[6] Messages from Smith appear in black and white on the left side.



31.     On information and belief, at least one of the documents Smith retained that—by her own admission—includes "all the lanes" bid on and "won or lost" comprises MODE's Confidential Information. Further, on information and belief, the customer Smith is either soliciting or preparing to solicit using the bid document, and the Confidential Information included therein, is one of MODE's most important customers. Smith's retention and misuse of MODE's Confidential Information violates the Employment Agreement and expressly belies her representations and warranties to MODE in the Settlement Agreement. Further, to the extent Smith has engaged in any efforts to directly or indirectly solicit one of MODE's important customers, she is breaching the Employment Agreement.

32.     Smith's actions are equal parts brash and unlawful. Indeed, Smith apparently lured MODE into executing a Settlement Agreement—and paying her a substantial sum—based

on false promises that she had not retained, and would not use, MODE's Confidential Information. But that is precisely what Smith did. And on information and belief, the Confidential Information Smith retained is directly related to one of the two MODE customers she is prohibited from soliciting under the Employment Agreement, as modified by the Settlement Agreement.

33.    Smith's actions constitute breach of contract, misappropriation of trade secrets, and fraud. Defendant must not be permitted to profit from false promises and otherwise enrich herself through brazen violations of contractual and legal obligations.

## V.    CAUSES OF ACTION

### COUNT I
### (Breach of Contract—Employment Agreement; (i) Non-Disclosure, (ii) Non-Solicitation, (iii) Return of Property)

34.    Plaintiff MODE realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

35.    The Employment Agreement is a valid and enforceable contract between MODE and Smith. MODE has performed all obligations under the Employment Agreement and all conditions precedent have been met or occurred. The Employment Agreement is governed by Texas law.

36.    Pursuant to Section 2.5 of the Employment Agreement, Smith agreed that she would not **"copy, take, or remove, directly or indirectly, any Confidential Information from any premises or facility maintained or owned by MODE, except in performance of the duties assigned to [her] by MODE."** Smith further agreed to "**not disclose, use, distribute, copy, publish, summarize or remove, either during or after the termination of [her]**

**employment or association with MODE, any Confidential Information, except as required in [her] work for MODE or as authorized in writing by MODE**."

37.     As more fully described above, Smith has violated the Employment Agreement's non-disclosure provision by misappropriating, disclosing, and using the Confidential Information for her own benefit. Smith's breach has caused and will continue to cause irreparable injury to MODE.

38.     Pursuant to the terms of the Employment Agreement (as amended), Smith also agreed that she would not, during her MODE employment or for one-year thereafter, **"(a) accept or solicit business from either [identified customer] for any product or service that is competitive with or similar to products or services offered by, manufactured by, designed by or distributed by MODE for which [she] had any responsibility for developing, providing, selling, managing, or manufacturing or about which [she] had access to Confidential Information … or (b) encourage either [identified customer] to cease doing business with MODE or to terminate or limit an existing relationship or arrangement with MODE**."

39.     On information and belief, and as more fully described above, Smith has violated the Employment Agreement's non-solicitation provision. Specifically, on information and belief Smith has retained and has used, or intends to use in the immediate future, Confidential Information that directly pertains to MODE's business with one of the identified customers. Accordingly, on information and belief, Smith has already solicited or intends to solicit or accept business from this customer for the purpose of selling or offering products or services competitive to MODE during the Employment Agreement's Restricted Period. Smith's actions have caused and will continue to cause irreparable injury to MODE.

40.    Section 2.7 of the Employment Agreement is titled "Return of Property". Therein, Smith agreed that "all tangible materials" that in any way relate to MODE's business and are furnished to Smith by MODE or acquired by Smith while employed by MODE are MODE's property. Smith further agreed in Section 2.7.1 that she would not "copy or remove from MODE's place of business property or information belonging to MODE…or provide any Recipient Materials to any competitor of MODE". Immediately upon termination of Smith's MODE employment, she was also required to "return to MODE" all property belonging to Plaintiff.

41.    As discussed above, Smith has breached the Employment Agreement's Return of Property provision. More specifically, and without limitation, Smith has retained and failed to return MODE's Confidential Information. Specifically, and without limitation, Smith has obtained and retained a "bid document" containing MODE's Confidential Information—including confidential customer information—for the express purpose of competing with MODE. Moreover, Smith's conduct was purposeful, knowing, willful, and malicious. Indeed, in text messages from Smith describing her nefarious actions, Smith included an "emoji" image of a face with a hand over its mouth—indicating that she knew her retention of MODE's Confidential Information was flatly wrong.

42.    Smith's conduct entitles MODE to a preliminary and permanent injunction, actual damages, pre- and post-judgment interest, court costs, exemplary damages, and attorneys' fees pursuant to the specific terms of the Employment Agreement and Texas law.

## COUNT II
## (Fraud)

43.    Plaintiff hereby alleges and incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

44.    On or about March 15, 2024, MODE executed the Settlement Agreement with Smith.

45.    In the Settlement Agreement, Smith represented and warranted, among other things, that as of the effective date of the Settlement Agreement she:

    a.    Had not directly or indirectly accepted business or competitively solicited business from an explicitly-identified customer;

    b.    Had not used or disclosed MODE's Confidential Information for her benefit or the benefit of anyone outside of MODE; and

    c.    Has complied with the Employment Agreement's "Return of Property" provision.

46.    Smith's representations and warranties were material to MODE executing the Settlement Agreement. Specifically, Section 21 of the Agreement clarifies that MODE was "**relying on the accuracy of Smith's representations and warranties**" and that they were a material inducement to MODE executing the Settlement Agreement.

47.    Smith knew the representations and warranties were false. For example, Smith knew that she had retained and used (or intended to use) MODE's Confidential Information in furtherance of soliciting competitive business with or from the identified customer. Smith also knew that she had not complied with the Employment Agreement's Return of Property provision because, among other things, she had retained a "bid document" containing highly sensitive and Confidential Information belonging to MODE. In addition, or in the alternative, Smith made these representations and warranties recklessly as a positive assertion without knowing their truth.

48.    Smith made the representations and warranties with the intention that MODE act on them. Specifically, Smith made these representations and warranties for the express purpose

of inducing MODE to execute the Settlement Agreement and provide Smith with the Settlement Payment contemplated thereunder. MODE did, in fact, execute the Settlement Agreement and provide Smith the Settlement Payment in reliance on the accuracy and truth of her representations and warranties.

49.    Smith's fraudulent misrepresentations damaged MODE by, among other things, inducing it to execute the Settlement Agreement and pay Smith $40,000.00 thereunder.

50.    Smith's actions entitle MODE to damages including actual and consequential damages and punitive and/or exemplary damages. *E.g.,* Tex. Civ. Prac. & Rem. Code 41.003(a). In addition, Smith's actions entitle MODE to recover its reasonable and necessary attorneys' fees in prosecuting this action because the Settlement Agreement (Section 22) expressly provides that in the event of the **"failure or untruthfulness of any representation or warranty herein"** MODE shall recover its attorneys' fees incurred in bringing such an action. Because Smith's representations and warranties have failed and/or were untruthful, MODE is entitled to its attorneys' fees.

### COUNT III
### (Misappropriation of Trade Secrets: Federal Defend Trade Secrets Act)

51.    Plaintiff hereby alleges and incorporates the preceding paragraphs of the Complaint as if fully set forth herein.

52.    Plaintiff's Confidential Information described above and throughout constitutes "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." The Confidential Information constitutes Plaintiff's "Trade Secrets" as defined in the Defend Trade Secrets Act.  See 18 U.S.C. § 1839(3),

(4). For purposes of Counts III and IV, Plaintiff's trade secrets-at-issue shall be referred to as "**Confidential Information and Trade Secrets**".

53.     Plaintiff owns the Confidential Information and Trade Secrets. MODE is the entity in which the rightful legal and equitable titles to and rights in the Confidential Information and Trade Secrets are reposed. MODE's Confidential Information and Trade Secrets are not readily ascertainable, through proper means, by an individual such as Smith.

54.     To protect its Confidential Information and Trade Secrets, MODE utilizes password protected systems and other electronic security measures that restrict access from unauthorized individuals. To further secure its Confidential Information and Trade Secrets, Plaintiff requires employees such as Smith to execute agreements—such as the Employment Agreement—containing confidentiality and non-disclosure provisions in order to work for MODE. In addition, to protect its Confidential Information and Trade Secrets, Plaintiff restricts access to same by using electronic account security measures such as unique user identification and passwords. A MODE employee such as Smith, for example, would be required to input a unique user ID and password to access electronic systems housing MODE's Confidential Information and Trade Secrets. MODE's TMS system, described above, is also password protected. Plaintiff therefore took reasonable measures to preserve the confidentiality of the Confidential Information and Trade Secrets that were disclosed or otherwise made available to Smith in her capacity as a MODE employee. *See* 18 U.S.C. § 1839(3).

55.     Smith had access to Plaintiff's Confidential Information and Trade Secrets. For example, Smith had extensive contacts with Plaintiff's customers and carriers and had phone and computer equipment provided by MODE that provided access to Plaintiff's Confidential Information and Trade Secrets. Smith also had access to information pertaining to pricing, bid

offers, and shipping lane data. Plaintiff permitted Smith to have access to its Confidential Information and Trade Secrets for the limited and exclusive purpose of servicing customers in her capacity as a MODE employee. Plaintiff's Confidential Information and Trade Secrets were not and are not publicly known or accessible.

56.    Plaintiff's Confidential Information and Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the Confidential Information and Trade Secrets. Upon information and belief, Smith derived economic value from the improper acquisition, disclosure and/or use of Plaintiff's Confidential Information and Trade Secrets to obtain a commercial advantage and to compete with Plaintiff by soliciting its customers to offer similar products and services. On information and belief, Smith has used, or intends to use, Plaintiff's Confidential Information and Trade Secrets to solicit business from and of Plaintiff's customers away from MODE and to her current employer, Lync to benefit her new employer and, ultimately, herself.

57.    Smith owed Plaintiff a duty to maintain the secrecy of the Confidential Information and Trade Secrets and to limit their disclosure. Smith acquired knowledge of the Confidential Information and Trade Secrets in her capacity as an employee of MODE. Further, Smith acquired, disclosed, and/or used the Confidential Information and Trade Secrets by and through improper means by, without limitation, retaining Plaintiff's Confidential Information and Trade secrets in violation of the Employment Agreement, Federal Law, and for unauthorized use in a manner inconsistent with MODE's rights therein. In addition, Smith retained, disclosed, and/or used the Confidential Information and Trade Secrets without Plaintiff's express or implied consent, insofar as Smith used improper means to acquire the Confidential Information and

Trade Secrets for the purpose of diverting business of and from Plaintiff's customers away from Plaintiff and to a competitor. Smith has also deliberately and improperly retained MODE's Confidential Information and Trade secrets despite having no right or authorization to do so, and in a manner inconsistent with MODE's rights therein. Smith therefore "misappropriated" Plaintiff's Confidential Information and Trade Secrets as defined in 18 U.S.C. Section 1839(5)(A) and/or (B).

58.    Smith's misappropriation of the Confidential Information and Trade Secrets caused Plaintiff to suffer actual losses, as Smith disclosed or used the Confidential Information and Trade Secrets to benefit herself and her current employer, Lync, a competitor company. Smith's conduct caused Plaintiff, at a minimum, to lose business contracts, opportunities, or income, damaged and interfered with Plaintiff's business good will, contracts and relationships, allowed Smith to obtain an unfair advantage in competing with Plaintiff, and subjected Plaintiff to unfair competition in the marketplace.  Plaintiff seeks compensation for damages in the amount of all such actual losses.  *See* 18 U.S.C. § 1836(b)(3)(B)(i)(I).

59.    Plaintiff also seeks damages for unjust enrichment caused by Smith's misappropriation for amounts that are not addressed in computing the damages for actual losses and additional damages measured by the imposition of liability for a reasonable royalty for Smith's unauthorized disclosure or use of the Confidential Information and Trade Secrets.  *See* 18 U.S.C. § 1836(b)(3)(B)(i)(II), (ii).

60.    Smith also willfully and maliciously misappropriated the Confidential Information and Trade Secrets. Plaintiff therefore seeks an award of exemplary for two times the amount of damages awarded as described in the foregoing paragraph, together with reasonable attorney's fees.  *See* 18 U.S.C. § 1836(b)(3)(C) and (D).

61.     Plaintiff also seeks an injunction to prevent any actual or threatened misappropriation, on such terms as the Court deems reasonable, requiring affirmative actions to be taken to protect the Confidential Information and Trade Secrets; and that the Court order payment of a reasonable royalty for future use of the Trade Secrets. *See* 18 U.S.C. § 1836(b)(3)(A)(i), (ii), (iii).

## COUNT IV
## (Violation of the Texas Uniform Trade Secrets Act)

62.     Plaintiff hereby alleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

63.     Smith's misappropriation of Plaintiff's Confidential Information and Trade Secrets as described in Count III also violate the Texas Uniform Trade Secrets Act ("**TUTSA**").

64.     TUTSA defines a trade secret as including, without limitation, all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Tex. Civ. Prac. & Rem. Code §134A.002(6).

65.     Smith's conduct as described in Count III also constitutes "misappropriation" of Plaintiff's Confidential Information and Trade Secrets as defined under TUTSA.

66.     Plaintiff derives independent economic value from its Confidential Information and Trade Secrets due to their not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure or use. As more fully described above, Plaintiff has taken reasonable measures under the circumstances to maintain the secrecy of its Confidential Information and Trade Secrets and have a legitimate interest in maintaining the confidentiality and integrity of its Confidential Information and Trade Secrets.

67.     Smith has misappropriated Plaintiff's Confidential Information and Trade Secrets in violation of the TUTSA.

68.     Smith's misappropriation of Plaintiff's Confidential Information and Trade Secrets has caused Plaintiff to suffer damages in an amount to be proven at trial.

69.     In addition, Smith's misappropriation of Plaintiff's Confidential Information and Trade Secrets was willful and malicious, entitling Plaintiff to exemplary damages and attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code 134(A).004-005.

70.     Plaintiff also seeks equitable relief, including the imposition of an injunction as permitted under TUTSA; an order awarding monetary damages in the form of compensation for reasonable royalties, and such other relief required to protect its Confidential Information and Trade Secrets.

## COUNT V
## (Request for Preliminary and Permanent Injunctions)

71.     Plaintiff hereby realleges and incorporate the previous paragraphs as if fully set forth herein.

72.     Plaintiff seeks preliminary and permanent injunctive relief, under Federal Rule of Civil Procedure 65.

73.     As demonstrated by the Complaint, Plaintiff has a probable right of recovery in this action. In addition, Plaintiff is suffering, and will continue to suffer, immediate and irreparable harm to its business as a result of Smith's unlawful conduct because she is (i) using the Confidential Information and Trade Secrets to gain an unfair advantage in the marketplace with existing and future business; and (ii) actively violating or preparing to violate the Employment Agreement's customer non-solicitation provision.

74.     Without a preliminary injunction, Plaintiff risks suffering from the effect of Smith's continued misuse of Plaintiff's Confidential Information and Trade Secrets and, in addition, Smith's failure to abide by the lawful and binding contractual obligations contained in her Employment Agreement.

75.     The total damages caused by Smith's unlawful conduct are not readily quantifiable or measurable and will likely be unrecoverable if Smith is permitted to continue her unlawful conduct before a hearing on this matter.

76.     The threatened damage to Plaintiff occasioned by Smith's unlawful conduct outweighs any potential damages to Smith of temporary injunctive relief. The Employment Agreement is a valid contract and contains a narrowly tailored customer non-solicitation restriction and a standard non-disclosure of confidential information provision. The Employment Agreement and these specific provisions are enforceable under Texas law. Smith has flagrantly violated the Employment Agreement's non-disclosure, return of property, and non-solicit provisions—as well as Federal and Texas law. Smith continues to unlawfully possess and use the Confidential Information and Trade Secrets in a manner inconsistent with MODE's rights therein. Absent an injunction, Smith will continue to unlawfully enrich herself and capitalize on an ill-gotten commercial advantage—all to Plaintiff's detriment. In addition, Smith's actions

flout both federal and state law. Smith's legitimate activities will not be affected by the entry of a preliminary injunction. Indeed, the terms of Plaintiff's requested preliminary injunction demand only that Smith comply with the terms of the Employment Agreement and applicable law.

77.    The requested injunctive relief is not adverse to the public interest. The public has an interest in a competitive marketplace that is fostered by innovation and development that is fairly obtained. Further, the public has an interest in individuals living up to and abiding by the rights and obligations set forth in lawfully executed contracts like the Employment Agreement. Moreover, Smith is in possession of the Confidential Information and Trade Secrets and, upon information and belief, is using or is highly likely to use same to unfairly compete. Smith has engaged in unlawful, anti-competitive behavior to the detriment of both Plaintiff and the public.

78.    MODE is prepared to post a bond in the amount the Court considers appropriate.

79.    MODE requests that, after further briefing and a hearing, the Court grant a preliminary injunction pending a trial on the merits to prevent Smith, and all persons acting in concert or participation with her or on her behalf or at their direction from:

(a)    Improperly using, disclosing, or transferring any confidential information, knowledge, or data of or belonging to Plaintiff that Smith received, developed, or had access to by virtue of her employment with MODE and that constitute MODE's Confidential Information and Trade Secrets or any other compilations of information which are owned by MODE and which are regularly used in the operation of MODE's business to give it an opportunity to obtain an advantage over competitors who do not know or use it;

(b)    Using, disclosing, selling, leasing, or otherwise transferring MODE's Confidential Information and Trade Secrets for Smith's own benefit, or for any other purpose or

in any other way that harms MODE, diminishes the value of the Confidential Information and Trade Secrets or is inconsistent with MODE's rights therein;

(c)    Using or otherwise relying upon the Confidential Information and Trade Secrets to solicit or attempt to solicit business competitive with the products or services offered by MODE from any actual or prospective customer or client of MODE;

(d)    Accepting or soliciting business from either of the two customers referenced in the Settlement Agreement for any product or service that is competitive with or similar to products or services offered by MODE during the Employment Agreement's "Restricted Period", plus the period of time during which Smith has been in breach of the Settlement Agreement;

(e)    Encouraging either of the two customers referenced in the Settlement Agreement to cease doing business with MODE or to terminate or limit any existing relationship with MODE during the Employment Agreement's "Restricted Period", plus the period of time during which Smith has been in breach of the Settlement Agreement;

(f)    Destroying, concealing or disposing of any documents, paper or electronic files, or other materials obtained from or belonging to MODE or containing or referring to the Confidential Information and Trade Secrets or other confidential or proprietary information or information thereof residing, in transit or storage in any of Smith's computers, hard drives, networks, or servers, including iCloud;

(g)    Altering, deleting, removing or writing over in any respect any documents, computer files (including, but not limited to, emails, hard drives, flash drives, disc drives, zip drives), data, electronic information, drafts or other things relating in any way to MODE,

including information regarding MODE's clients, property, or business information, until such time as those materials may be turned over in discovery or until further order of the Court; and

        (h)     Removing any evidence from the jurisdiction of this Court.

## VI.    INTEREST

80.    Plaintiff is entitled to prejudgment and post-judgment interest at the highest rate allowed under Texas law, for which Plaintiff seeks compensation.

## VII.    CONDITIONS PRECEDENT

81.    Plaintiff complied with all required conditions precedent in bringing its claims. All conditions precedent have occurred, been met and/or are excused.

## VIII.    JURY TRIAL

82.    Plaintiff seeks a jury trial as to all claims against Defendant.

## IX.    REQUEST FOR RELIEF

83.    Plaintiff MODE requests that Defendant Casey Smith be cited to appear and answer herein; and that, upon a hearing or trial of this cause, the Court enter judgment for Plaintiff as follows:

        (a)     enter judgment against Defendant for all losses and actual, special, consequential, economic, out-of-pocket, exemplary, and other damages and losses incurred by Plaintiff, in an amount determined by the trier of fact;

        (b)     enter judgment against Defendant for exemplary damages as permitted by the DTSA and the TUTSA;

        (c)     enter judgment against Defendant for exemplary damages in an amount determined by the trier of fact as permitted under Federal and Texas law;

        (d)     award Plaintiff equitable relief, including payment of royalties, forfeiture and disgorgement; and imposition of a constructive trust or equitable lien as set forth in this Complaint;

        (e)     enter an order permitting MODE to engage a forensic computer company to take possession of and to image any cellular/mobile phone used by Defendant;

(f)    enter a preliminary injunction for the relief requested against Defendant as set forth in Count V of this Complaint;

(g)    upon final trial, enter judgment against Defendant for full permanent injunctive relief as permitted under federal and Texas law;

(h)    award prejudgment and post-judgment interest at the highest rates allowed by law;

(i)    award Plaintiff its reasonable and necessary attorneys' fees and court costs;

(j)    enter such additional orders and judgments as this Court may find appropriate based upon the facts of this case; and

(k)    award such other and further general and special relief, at law or in equity, to which this Court finds Plaintiff to be justly entitled.

Dated: July 1, 2024        Respectfully submitted,

By:    */s/ Stephen E. Fox*
Stephen E. Fox
Texas Bar No. 07337260
sfox@sheppardmullin.com
Jonathan E. Clark
Texas Bar No. 24069515
jclark@sheppardmullin.com
Alexandria D. Amerine
Texas Bar No. 24132154
aamerine@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, Texas 75201
Telephone: 469.391.7400
Facsimile: 469.391.7401

**ATTORNEYS FOR PLAINTIFF**