IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MODE GLOBAL LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-1675-K-BN |
| | § | |
| CASEY SMITH, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff MODE Global LLC ("MODE") filed this lawsuit seeking injunctive relief and damages against its former employee, Defendant Casey Smith, alleging claims that include breach of an employment agreement, fraud, and theft of trade secrets. *See* Dkt. Nos. 1 & 6.

MODE obtained an extension of time to serve Smith. *See* Dkt. Nos. 8 & 9.

And, after MODE moved for a second extension of time to do so and for the Court to authorize substitute service, *see* Dkt. No. 10, United States District Judge Ed Kinkeade referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b), *see* Dkt. No. 11.

The Court then extended MODE's deadline to serve Smith to January 6, 2025. *See* Dkt. No. 12. And, after MODE's attempt at service by certified mail failed, it moved the Court to authorize a substituted method of service due to Smith's "continued evasion of service" and "request[ed] that the Court permit it to serve Smith by affixing a copy of the Summons and Complaint to the front door or gate of" her

residence in Tennessee. Dkt. No. 16. The Court granted that request and extended MODE's deadline to serve Smith to February 5. *See* Dkt. No. 17.

A summons return was filed on January 28. *See* Dkt. No. 18. And, in response to the Court's April 23 order [Dkt. No. 19], MODE moved for entry of default and default judgment on April 29. *See* Dkt. Nos. 20 & 21.

The Clerk of Court entered default the next day. *See* Dkt. No. 22.

And, for the reasons and to the extent set out below, the Court should grant the motion for default judgment and then refer the issues of damages and injunctive relief to the undersigned for further recommendation.

**Legal Standards**

When a defendant has "failed to plead or otherwise defend" an action, the Court may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

In this circuit, there is a required three-step procedure to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults").

Even though the United States Court of Appeals for the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this

preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide whether default judgment is appropriate: (1) "whether the default was caused by a good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893.

And default judgment may be appropriate where a defendant fails to follow court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to a defendant's "delay and failure to comply with court rules").

Next, the Court must assess the merits of the plaintiff's claims and find a

"sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (per curiam))).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV. P. 8(a)(2).

This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206.

The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. So detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

So, "in the context of a default judgment, unliquidated damages normally are

not awarded without an evidentiary hearing … [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311. Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Two other caveats also apply. "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis*, 236 F.3d at 767 (citations omitted).

And, before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

## Analysis

### I. The Court has jurisdiction over the subject matter of this lawsuit and the defaulting defendant.

Deciding the motion for default judgment "begins, as it must, by examining the Court's jurisdiction." *Wattiker v. Elsenbary Enters., Inc.*, No. 3:22-cv-940-B-BN, 2023

WL 5167023, at *3 (N.D. Tex. May 19, 2023) (cleaned up; quoting *Hammerschmidt v. Garland*, 54 F.4th 282, 287 (5th Cir. 2022)), *rec. accepted*, 2023 WL 5167019 (N.D. Tex. June 13, 2023); *accord Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (citation omitted)).

Through its complaint, MODE alleges that the Court possesses subject-matter jurisdiction under both 28 U.S.C. §§ 1331 and 1332. *See* Dkt. No. 1, ¶ 7.

Starting with Section 1332 – which requires in part that each plaintiff's citizenship must be diverse from each defendant's citizenship – the undersigned cannot agree at least insofar as MODE has not properly alleged its own citizenship.

MODE alleges that it is "a Delaware limited liability company with its principal place of business" in Texas," Dkt. No. 1, ¶ 4, but an LLC is not a corporation, and so the Court is not concerned with, for example, where the LLC's nerve center may be located, *cf.* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Instead, "the citizenship of an LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (cleaned up). And, so, "[t]he allegations of an LLC's citizenship must include each member's identity and citizenship," *Phillips N. Am. LLC v. U.S. Auto. Ass'n*, No. 3:25-cv-1210-BN, 2025 WL 1828523, at *2 (N.D. Tex. July 2, 2025) (cleaned up).

But MODE also provides factual content to plausibly support its claim that Smith violated a federal statute, the Defend Trade Secrets Act, 18 U.S.C. §§ 1832 and 1836(B)(3) ("DTSA"). And its assertion of a more than frivolous or insubstantial violation of federal law means that the Court possess subject-matter jurisdiction

under Section 1331. *See, e.g.*, *Copeland v. E\*Trade Cap. Mgmt., L.L.C.*, No. 24-10658, 2025 WL 66732, at \*2 (5th Cir. Jan. 10, 2025) (per curiam).

Section 1331 also serves as an "independent basis of subject matter jurisdiction" that allows for supplemental jurisdiction under 28 U.S.C. § 1367 for MODE's purely state law claims. *Atkins v. Propst*, No. 22-10609, 2023 WL 2658852, at \*2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012)).

MODE's allegations further include that

> Section 9 of Smith's Employment Agreement with MODE designates that any action arising thereunder may be brought in "any federal or state court located within Dallas County, Texas" and further notes that the parties "irrevocably waive … any objection that they may now or hereafter have to the laying of venue" in Dallas County. In addition, Smith's Settlement Agreement with MODE provides that any actions arising thereunder shall "be brought and heard in the United States District Court for the Northern District of Texas" and contains a consent to exclusive jurisdiction and venue of and in this Court.

Dkt. No. 1, ¶ 8.

MODE has therefore alleged that the Court has jurisdiction over Smith, considering that "[p]ersonal jurisdiction [over a defendant], unlike subject matter jurisdiction, is waivable." *S.E.C. v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 294-95 (5th Cir. 2024) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982)). And such a waiver can occur "in a variety of ways," including by "expressly consent[ing] to personal jurisdiction in … a contract." *Id.* at 295 (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)).

## II. The procedural requirements for default judgment have been met.

MODE served Smith on January 15, 2025 through a substituted method

authorized by the Court. *See* Dkt. Nos. 17 & 18. The Clerk entered default on April 30, 2025. *See* Dkt. No. 22. And attached to MODE's motion requesting default judgment is sufficient evidence reflecting that Smith is neither in the military service, a minor, nor incompetent. *See* Dkt. No. 21-1, ¶¶ 8 & 9 & Ex. A-2.

### III. The allegations support default judgment as to the claims asserted.

MODE alleges claims against Smith for breach of contract, fraud, and violation of the DTSA and the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE § 134A.001 ("TUTSA"), and MODE seeks injunctive relief and damages, *see generally* Dkt. No. 1.

Starting with the trade secret claims,

> [t]he DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Accordingly, the elements of a DTSA claim are "(1) ownership of a trade secret that (2) has been misappropriated and that (3) relates to a product or service in interstate commerce." *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 594 (E.D. Tex. 2021). The elements of a trade-secret misappropriation claim under Texas law are similar. To recover for trade-secret misappropriation, a plaintiff must show: (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366–67 (Tex. App. – Dallas 2009, pet. denied).

*BarZ Adeventures Inc. v. Patrick*, No. 4:20-CV-299, 2022 WL 4082464, at *3 (E.D. Tex. Sept. 6, 2022).

MODE's allegations, deemed admitted by Smith's default, support the elements of these claims, as MODE persuasively sets out in its motion:

> MODE alleges that it owns certain trade secrets, including a "bid document" which includes "all the lanes" bid on and "won or lost," that

> provide it a competitive advantage. [ECF No. 1, ¶¶ 31, 56, 66]. MODE took reasonable measures to keep this information secret and only disclosed its confidential information and trade secrets to Smith pursuant to her employment with MODE. [*Id.* ¶¶ 15-16]. Smith signed the Employment Agreement, which states that this information is confidential and was not to be used or disclosed without MODE's consent. [*Id.* ¶ 18]. Nonetheless, Smith used and disclosed MODE's trade secrets without its consent to solicit and steal one of MODE's most important customers. [*Id.* ¶¶ 28-31]. And … Smith's conduct was willful and malicious. [*See id.* ¶¶ 39].

Dkt. No. 21 at 15-16; *accord BarZ Adeventures*, 2022 WL 4082464, at *4.

A sufficient basis in the pleadings likewise exists to enter judgment on [MODE's] claim for breach of contract under Texas law. To succeed on a breach-of-contract claim, a plaintiff must establish: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). Each element is met here.

*Back-Up Sys. Maintenance, LLC v. Suarez*, No. 4:21-CV-521-SDJ, 2022 WL 2119115,

at *5 (E.D. Tex. June 13, 2022).

> MODE has attached a copy of the Employment Agreement to its Complaint, which is a valid and enforceable contract. [ECF No. 1-1]. Therein, Smith agreed that to a non-disclosure provision [*Id.* § 2.5], amended customer non-solicitation provision [*Id.* § 2.8.2], and return of property provision [*Id.* § 2.7]. MODE performed under the Employment Agreement by, among other things, providing Smith access to its Confidential Information. [ECF No. 1, ¶¶ 12-16]. But Smith violated the Employment Agreement's provisions by retaining and using a bid document containing MODE's Confidential Information to solicit business from MODE's customer to her current employer, Lync, to benefit her new employer and, ultimately, herself. [*Id.* ¶¶ 28-31, 37, 39, 41]. Further, Smith's conduct was willful and malicious – for example, in text messages from Smith describing her nefarious actions, Smith included an "emoji" image of a face with a hand over its mouth, indicating that she knew her retention of MODE's Confidential Information was flatly wrong. [*Id.* ¶ 30]. As a result, MODE has suffered damages due to Smith's breach. [*Id.* ¶ 39].

Dkt. No. 21 at 13; *accord Back-Up Sys. Maintenance*, 2022 WL 2119115, at *6.

Turning last to MODE's fraud claim, "[w]hen a plaintiff alleges a claim of fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that the plaintiff 'state with particularity the circumstances constituting [the] fraud.'" *Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 293 (5th Cir. 2023) (quoting FED. R. CIV. P. 9(b)).

"Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023) (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368-69 (5th Cir. 2001); citation omitted).

So, "'[w]here averments of fraud are made in a claim in which fraud is not an element,' a court must 'disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.'" *Id.* (quoting *Lone Star Ladies*, 238 F.3d at 368). "The application of Rule 9(b) is thus fatal when a claim is premised entirely upon a course of fraudulent conduct that is not sufficiently pled." (citation omitted).

"Rule 9(b), in turn, demands 'the who, what, when, and where to be laid out before access to the discovery process is granted.' [And, so a plaintiff] must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Elson*, 56 F.4th at 1009 (cleaned up; quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 178, 177 (5th Cir. 1997)).

And

> [a] claim under Texas law requires that
> (1) the defendant made a material misrepresentation; (2)

- 10 -

> the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury.

*Wesdem*, 70 F.4th at 293 (quoting *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019)).

MODE also alleges a sufficient claim of fraud, as it sets out in the default motion:

> Smith defrauded MODE by inducing MODE to execute a Settlement Agreement – and pay Smith $40,000.00 – based on her representation and warranties, which she knew to be false. Specifically, MODE and Smith executed the Settlement Agreement on March 15, 2024. [ECF No. 1, ¶ 21]. Therein, Smith represented and warranted, among other things, that as of the effective date of the Settlement Agreement she: (i) had not directly or indirectly accepted business or competitively solicited business from an explicitly identified customer; (ii) had not used or disclosed MODE's Confidential Information for her benefit or the benefit of anyone outside of MODE; and (iii) had complied with the Employment Agreement's "return of property" provision. [*Id.* ¶ 22]. Smith's representations and warranties were material to MODE executing the Settlement Agreement, and MODE relied on the accuracy of same when executing the Settlement Agreement. [*Id.* ¶¶ 23, 46].
> 
> However, such representations and warranties were false; for example, Smith knew that she remained in possession of a bid document containing MODE's Confidential Information, in violation of the Employment Agreement's "return of property" provision. [*Id.* ¶¶ 28-31, 47]. Indeed, Smith later bragged about her possession of this bid document via a series of texts, and her intent to use same to solicit MODE's business on behalf of her new employer. [*Id.* ¶¶ 29-31]. Smith made the representations and warranties with the intention that MODE act on them, and, among other things, provide her with a Settlement Payment in the amount of $40,000.00. [*Id.* ¶ 48]. And MODE, relying on Smith's representations and warranties, executed the Settlement Agreement and paid Smith the Settlement Payment. [*Id.* ¶¶ 21-22, 48]. Smith's fraudulent misrepresentations damaged MODE by, among other things, inducing it to execute the Settlement Agreement and pay Smith $40,000.00 thereunder. [*Id.* ¶¶ 22, 49].

Dkt. No. 21 at 14-15.

### IV. Consideration of other factors supports default judgment.

Default judgment is a harsh remedy, but, as set out above, the record supports default judgment. There has not been substantial prejudice against MODE. There are clearly established grounds for default, as set out above. And there is no indication that the default was caused by good faith mistake or excusable neglect. And, so, the Court would not necessarily feel obligated to set aside a default (should a motion to do so be filed). *See Lindsey*, 161 F.3d at 893.

### V. MODE is entitled to relief, but further proceedings may be necessary to fashion that relief.

MODE concludes its motion by requesting a hearing to determine damages. *See* Dkt. No. 21 at 14.

And courts routinely "defer a determination as the damages to be awarded pending a future hearing." *E.g.*, *Adams v. Chime Sols., Inc.*, No. 3:23-cv-1482-S, 2024 WL 4137263, at *7 (N.D. Tex. Aug. 14, 2024), *rec. accepted*, 2024 WL 4139646 (N.D. Tex. Sept. 9, 2024); *cf. Rolex Watch USA, Inc. v. Trujillo*, No. 2:23-cv-101-Z-BR, 2023 WL 11795676, at *4 (N.D. Tex. Nov. 16, 2023) (Even where "[a] defendant's default concedes the truth of the well-pleaded allegations of the [c]omplaint," a plaintiff still must "marshal competent evidence in support of damages." (cleaned up)).

And, so, if the Court adopts or accepts the undersigned's recommendation that the motion for default judgment be granted, the Court should then refer to the undersigned for recommendation the issues of the exact amount of damages, including reasonable and necessary attorneys' fees and costs, and the exact scope of

the permanent injunction that the Court should enter.

## Recommendation

The Court should grant Plaintiff MODE Global LLC's motion for default judgment [Dkt. No. 20] and then refer the issues of damages and injunctive relief to the undersigned for further recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 23, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE